# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JOHN G. SOARES,**                                    *Chapter 7*
      Debtor                                    *Case No. 09-17198-JNF*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are 1) the Amended Objection to Debtor's Claim of Exemption (the "Amended Objection to Exemption") filed by Lynne F. Riley, Esq., the Chapter 7 Trustee (the "Trustee"); 2) the Opposition to the Amended Objection filed by John G. Soares (the "Debtor"); 3) the Debtor's Motion for Reconsideration of the denial of a "Motion for a Determination that the Chapter 7 Trustee Is Procedurally Time-Barred under Bankruptcy Rule 4003(b)(1) from Objecting to Debtor's 11 U.S.C. § 522(d)(11)(A) Exemption Claim in a Pending Lawsuit against Joseph Pereira" (the "Motion for Determination"); and 4) the Chapter 7 Trustee's Objection to the Motion for Reconsideration.  The Court conducted a hearing on October 19, 2011 at which time it directed the parties to file an Agreed Statement of Facts and briefs.  The material facts necessary to decide the matters are not in dispute.  The Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

Pursuant to their Statement of Agreed upon Facts, the parties stipulated to the

following pertinent facts.  The Debtor filed a Chapter 7 petition on July 30, 2009, together

with Schedules of Assets and Liabilities, a Statement of Financial Affairs and other required

documents.  On Schedule B - Personal Property, the Debtor listed the following asset:

> Lawsuit pending Bristol County Superior Court against advisor Joseph
> Pereira with an addendum [sic] of $200,000.00. Amount of recovery
> unknown. There is a $200,000 attachment on Mr. Periera's [sic] real estate.

On Schedule C -  Property Claimed as Exempt, the Debtor claimed an exemption in a

lawsuit against Joseph Pereira ("Pereira") pursuant to 11 U.S.C. § 522(d)(5) in the amount

of $11,000.  In addition, he claimed an exemption pursuant to 11 U.S.C. § 522(d)(11)(A) in

an unknown amount.[1]  On September 15, 2009, Stephen E. Shamban, the interim Chapter

7 Trustee ("Trustee Shamban"), convened the meeting of creditors pursuant to 11 U.S.C.

§ 341 (the "§ 341 Meeting").  Debtor's counsel, David G. Prentiss ("Attorney Prentiss"),

attended the § 341 Meeting.  At the § 341 Meeting, the Debtor testified that 1) he reviewed

the Schedules of Assets and Liabilities and Statement of Financial Affairs before they were

filed; 2) the Schedules contained full, complete and accurate statements of all his assets and

---

[1] Schedule C contains four columns, captioned as follows:  Description of the
Property; Specify Law Providing Each Exemption; Value of Claimed Exemption; and
Current Value of Property Without Deducting Exemption.  The Debtor did not specify a
current value of property for each of his claimed exemptions, simply putting
"unknown" in the fourth column.  Additionally, he did not describe a separate criminal
action for which he could claim an "award under a crime victim's reparation law"
pursuant to § 522(d)(11)(A), although the existence of such an action is implicit in view
of the nature of the § 522(d)(11)(A) exemption.

2

liabilities; 3) that he initiated an action against Pereira for embezzlement; 4) that Attorney Prentiss submitted a copy of the state court complaint and answer, which was filed shortly before the Debtor commenced his Chapter 7 case, as well as the name of the attorney representing Pereira to the interim Chapter 7 Trustee; 5) the Debtor's claims against Pereira and his lawsuit constitute property of the bankruptcy estate, *see* 11 U.S.C. § 541(a), and the Debtor did not dispute the interim Trustee's statement that as Trustee he was now the principal plaintiff in the lawsuit; 6) Pereira had harmed other people and those people also had filed lawsuits against him; 7) he had no claims other than the lawsuit, including personal injury claims or claims for any type of discrimination or harassment; 8) Pereira stole approximately $230,000.00 from the Debtor over a three-year period; 9) he retained an attorney to prosecute the lawsuit against Pereira; and 10) he paid the attorney a $3,000 retainer, although he had no written fee agreement.

Although the Debtor did not provide Trustee Shamban with documents concerning a criminal matter pending against Pereira, he obliquely referenced one through his claimed exemption pursuant to 11 U.S.C. § 522(d)(11)(A). Additionally, Attorney Prentiss stated at the § 341 Meeting that "There's a pending indictment against this [sic]." At the conclusion of the § 341 Meeting, Trustee Shamban indicated that he might "have more [questions] in the future about this lawsuit," adding "I'll get in touch with Attorney Prentiss and he'll get in touch with you."

Trustee Shamban did not continue the § 341 Meeting to a specific date and time. On November 17, 2009, Trustee Shamban caused the filing of the following docket entry:

3

"Meeting of Creditors Held and Examination of Debtor *on 9/15/2009*." Moreover, Trustee Shamban did not ask the Debtor to provide him with any documents pertaining to either the civil or criminal matter pending against Pereira.[2]

On November 27, 2009, the Court entered an order of discharge pursuant to which the Debtor was discharged of all dischargeable debts.

On January 6, 2010 Trustee Shamban filed an Application of Trustee to Employ Stephen E. Shamban Law Offices, P.C. as Counsel for a variety of the purposes, including analyzing claims, transfers and exemptions. The Court granted the Application on January 11, 2010. On November 18, 2010, Trustee Shamban died unexpectedly. Between the allowance of Trustee Shamban's Application and his untimely passing, the docket does not reflect any activity in the case.

On December 10, 2010, Lynne F. Rilely, Esq. accepted appointment as successor trustee (the "Trustee"). On May 11, 2011, she filed an Application for Order Authorizing Chapter 7 Trustee to Employ Counsel pursuant to which she sought authority to employ her law firm as counsel. The Court granted the Application on May 12, 2011.

On July 5, 2011, the Debtor filed his Motion for Determination pursuant to which he sought a determination that the Chapter 7 Trustee was precluded from objecting to his claimed exemptions. Citing <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638 (1992), and <u>Newman</u>

_____

[2] In conjunction with the Statement of Agreed Upon Facts, Attorney Prentiss submitted an affidavit in which he stated that Trustee Shamban made no requests at the § 341 Meeting for additional information and that after the § 341 Meeting he "never received any requests from Trustee Shamban for additional information concerning the asset reported on Schedule B. . . ."

v. White (In re Newman), 428 B.R. 257 (B.A.P. 1st Cir. 2010), he argued that the Trustee was barred from objecting to his exemptions because "the Chapter 7 Trustee [Trustee Shamban] never announced a date and time of adjournment of the section 341 meeting it is deemed concluded on October 15, 2009."  He concluded that because no objection to the Debtor's claimed exemptions were filed by Trustee Shamban the assets he claimed as exempt were no longer property of the Debtor's bankruptcy estate.

The Trustee filed an Opposition to the Motion to Determine.  On July 25, 2011, the Court conducted a hearing and denied the Motion to Determine in part because there was no transcript from the § 341 Meeting at that time.[3]

On August 4, 2011, almost two years after the § 341 Meeting, the Trustee filed an Objection to the Debtor's claimed exemptions in which she alleged that the Debtor's claimed exemption in the lawsuits were ambiguous.  The Debtor filed his Opposition to the Trustees Objection on October 6, 2011 along with a motion to file his opposition late, which was allowed by the Court.

On October 18, 2011, the Trustee filed an Amended Objection to Exemption in which she alleged, inter alia, that an exemption under 11 U.S.C. § 522(d)(11)(A) only applies to compensation for actual bodily injury, not to compensation for pecuniary loss.  The Debtor filed a Supplemental Opposition to the Amended Objection to Exemption.  On October 19,

---

[3] On August 5, 2011, the  Debtor filed a notice of appeal to the United States Bankruptcy Appellate Panel for the First Circuit (the "BAP"), along with a motion for leave to appeal.  The Trustee filed an Opposition. On August 25, 2011, the BAP denied the motion for leave to appeal this Court's July 25, 2011 order and entered a Judgment of Dismissal of the appeal.

2011, the Court conducted a hearing at which time it took the matter under advisement.

On December 15, 2011, the Debtor provided the Trustee with documents relating to the criminal proceedings against Pereira

The parties agreed that, on February 9, 2009, prior to the commencement of criminal proceedings, the Debtor initiated a civil lawsuit against Pereira for Conversion (Count I); Fraud/Deceit (Count II); Breach of Fiduciary Relationship (Count III); Negligent Misrepresentation (Count IV); Intentional Misrepresentation (Count V), Unjust Enrichment (Count VI); and Breach of Contract (Count VII). Less than five months later, on June 24, 2009, a 13 count criminal indictment was returned against Pereira. On September 30, 2010, Pereira pled guilty to all thirteen counts and was sentenced to MCI Cedar Junction for a term of not more than five years nor less than three years for offense 6. With respect to offense 12 which related to his criminal conduct involving the Debtor, Pereira was sentenced to probation for a term of five years concurrent with the probation imposed on prior counts of the indictment with restitution. On September 30, 2010 a docket notation was entered stating - restitution hearing to be scheduled. As of the filing of the Statement of Agreed upon Facts, no restitution hearing had been held, and to date, it does not appear that there has been an award of restitution to the Debtor or any other victims in the criminal matter.

## III. POSITIONS OF THE PARTIES

### A. The Trustee

In her original Objection to Exemption, the Trustee complained that the Debtor did

not distinguish between the civil and criminal suits pending against Pereira on Schedules B and C.  The Trustee objected to "the Debtor's claim of exemption to the extent that the Debtor claims an exemption in his interest in the civil suit and any pre-judgment attachment securing such Civil Suit in excess of $11,775 (which is the Debtor's remaining exemption allowance under § 522(d)(5))."  She did not object specifically to an unlimited exemption in any restitution award on account of the criminal action, although she reiterated her complaint that the Debtor did not differentiate between the civil and criminal matters and stated that § 522(d)(11)(A) is not applicable, because it applies only to "an award under a crime victim's reparation law."

The Trustee subsequently amended her original Objection to Exemption "for the purpose of objecting to the Debtor's claim of exemption in the Restitution Award to the extent that the Debtor seeks to exempt restitution payments that are not compensation for actual bodily injury."  She argued that the exemption under § 522(d)(11)(A) only applies to compensation "for actual bodily injury, not to compensation for pecuniary loss," citing In re Seymour, 285 B.R. 57, 58-59 (Bankr. N.D. Ga. 2002)(citing H. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1977, p. 5963 ("This provision in subparagraph (D)(11) is designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss")); In re Herb, 412 B.R. 688 (Bankr. M.D. Pa. 2009); and In re Carelock, No. 05-51431-JDW, 2006 WL 3708688 (Bankr. S.D. Ga. Jan, 13, 2006)).

The Trustee maintains that her Amended Objection to Exemptions is not time barred

7

under Fed. R. Bankr. P. 4003(b) and the decision of the United States Supreme Court in

Taylor v. Freeland & Kronz, 503 U.S. 638 (1992). Citing Schwab v. Reilly, 130 S.Ct. at 2663,

she argues:

> Recently the Supreme Court clarified the applicability of Taylor, in Schwab
> v. Reilly, __U.S. __, 130 S.Ct. 2652, 2660 (2010). Emphasizing the need for
> clarity in a debtor's schedules, the Court held that a trustee is entitled to
> evaluate a claimed exemption based on only three entries on Schedule C:
> "[(1)] the description [of the property] in which [the debtor] claimed the
> exempt interests; [(2)] the Code provisions governing the claimed
> exemptions; and [(3)] the amounts [the Debtor] listed in the column titled
> 'value of claimed exemption.'"

The Trustee adds:

> The Massachusetts Bankruptcy Court recently held in In re Hall, 453 B.R. 22,
> 28 (Bankr. D. Mass. 2011), that a court must first determine "what" has been
> exempted before considering whether the time to object to the exemptions
> has elapsed. The Bankruptcy Court premised its holding on Schwab and the
> First Circuit Court of Appeals' holding in In re Barroso–Herrans, 524 F.3d
> 341, 344 (1st Cir. 2008), namely (i) that Taylor "does not tell us what has been
> claimed as exempt - only that whatever has been claimed as exempt is
> beyond the estate's grasp once the deadline has elapsed" and (ii) that to the
> extent there are ambiguities contained in the schedules, they should be
> construed against the debtor because neither the Trustee nor the bankruptcy
> court need to look beyond the debtor's schedules to glean what he "meant"
> to exempt. See Schwab v. Reilly, 130 S.Ct. at 2660; In re Barroso-Herrans, 524
> F. 3d at 345 (it is the debtor's burden to properly disclose property and
> claimed exemptions in such property); In re Hall, 453 B.R. 30.

The Trustee asserts that the Debtor's Schedule C is ambiguous and establishes that

the Debtor intended to claim an exemption in the amount of $11,000 in the civil matter

only. Because the Debtor did not timely disclose the pending criminal matter, she contends

that the Amended Objection to Claim is timely under the case-by-case approach adopted

in Newman v. White (In re Newman), 428 B.R. 257 (B.A.P. 1st Cir. 2010).

8

B. <u>The Debtor</u>

The Debtor contends that the Trustee's objection to his claimed exemption under 11 U.S.C. § 522(d)(11)(A) does not apply to any  recovery in the pending civil lawsuit against Pereira.  He maintains that "a recovery in the civil lawsuit will offset and reduce any criminal reparation ordered in the Criminal suit against Mr. Pereira thus impairing his right to receive an award under a crime victims reparation law."  He cites <u>People v. Marone</u>, 891 N.Y.S.2d 509, 68 A.D.3d 1443 (2009) (civil settlement agreement did not operate to forgive defendant's obligation to pay criminal restitution amount that remained unsatisfied after the civil settlement), and urges the Court to apply its reasoning to Mass. Gen. Laws 258B, § 3(o). He also requests the Court to find that his exemption under 11 U.S.C. § 522(d)(11)(A) applies to any recovery in the civil action.[4]

The Debtor also contends that the Trustee's Amended Objection to Exemption is untimely. He relies upon the Supreme Court's decision in <u>Taylor</u>, but he also maintains that applying the factors set forth in <u>In re Newman</u>, the Trustee's Objection to Exemption produces the same result.  He adds that there is no requirement under § 522(d)(11)(A) that a debtor is only entitled to exempt compensation for actual bodily injury, particularly as § 522(d)(11)(A) refers only to "a crime victims reparation law."  Citing <u>Commonwealth v. Rotonda</u>, 434 Mass. 211, 221 (2001), he argues that under Mass Gen . Laws ch. 258B, § 3(o)

---

[4] The Debtor subsequently abandoned this confusing argument.  The exemption available under 11 U.S.C. § 522(d)(5), the so-called "wild card" exemption "in any property" is capped and should not be confused with the uncapped exemption available under § 522(d)(11)(A).

judges can impose restitution to make victims whole for financial injuries.[5]

## IV. DISCUSSION

A. Applicable Law

Section 522 (l) provides:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

---

[5] In Rotonda, the court stated:

To the extent that the judge wanted to ensure that the victim of the defendant's conduct was made whole and was reimbursed for any economic loss caused by the defendant's actions and by the consequent prosecution of the case, he could have directed that restitution be calculated and made a requirement of the final disposition, for restitution is an appropriate consideration in sentencing. Commonwealth v. Nawn, 394 Mass. 1, 6, 474 N.E.2d 545 (1985). Victims are entitled to request restitution and judges are empowered to impose it pursuant to G.L. c. 258B, § 3 (o). The purpose of restitution, however, is to compensate the injured party for losses incurred as a result of the defendant's criminal conduct. It is not to reward or create an incentive for the dismissal of criminal charges. The payment of restitution is limited to the economic losses caused by the conduct of the defendant and documented by the victim. See G.L. c. 258B, § 3 (o); Commonwealth v. Nawn, supra at 7-8, 474 N.E.2d 545 (amount must be subject to proof of economic loss). Cf. Commonwealth v. Yeshulas, 51 Mass.App.Ct. 486, 492, 746 N.E.2d 587 (2001) (in setting restitution order in arson case, proper for judge to rely on fire department, with no stake in amount, to estimate loss to victim).

434 Mass. at 221 (footnote omitted). Section 3(o) of Mass. Gen. Laws ch. 258B affords victims the right to request "that restitution be an element of the final disposition of a case and to obtain assistance from the prosecutor in the documentation of the victim's losses."

11 U.S.C. § 522(l).  Fed. R. Bankr. P. 4003, in pertinent part, provides:

> (b) Objecting to a claim of exemptions
>
>> (1) Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.
>
> (c) Burden of proof
>
>> In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

Fed. R. Bankr. P. 4003(b), (c).

The Supreme Court has construed the language of 11 U.S.C. § 522(l).  In Taylor v. Freedland & Kronz, 503 U.S. 638 (1992), the debtor, Emily Davis, filed a bankruptcy petition while she was pursuing an employment discrimination claim against TWA in the state courts.  The petitioner, Robert J. Taylor, was appointed the  trustee; the respondents were Wendell G. Freeland, Richard F. Kronz, and their law firm, who represented Davis in the discrimination suit.  On a schedule filed with the Bankruptcy Court, Davis claimed as exempt property the money that she expected to win in her discrimination suit against TWA, although she did not have a right to exempt more than a small portion of the proceeds under either state law or the federal exemptions specified in § 522(d). She described this property as "Proceeds from lawsuit-[Davis] v. TWA" and "Claim for lost

wages" and listed its value as "unknown."  The trustee initially did not object to her claim

of exemption believing it had no value.  When the debtor eventually settled with TWA for

over $110,000 and paid a significant portion of the proceeds to the respondents, the trustee

demanded turnover from the respondents.  The respondents argued, however, that they

could keep their fees because the debtor claimed the proceeds as exempt and, in the

absence of objection, the proceeds were no longer property of the debtor's bankruptcy

estate.

The Supreme Court rejected the trustee's argument that § 522(l) requires debtors to

file claims for exemptions in good faith.  It held:

> Davis claimed the lawsuit proceeds as exempt on a list filed with the
> Bankruptcy Court. Section 522(l), to repeat, says that "[u]nless a party in
> interest objects, the property claimed as exempt on such list is exempt." Rule
> 4003(b) gives the trustee and creditors 30 days from the initial creditors'
> meeting to object. By negative implication, the Rule indicates that creditors
> may not object after 30 days "unless, within such period, further time is
> granted by the court." The Bankruptcy Court did not extend the 30-day
> period. Section 522(l) therefore has made the property exempt. Taylor cannot
> contest the exemption at this time whether or not Davis had a colorable
> statutory basis for claiming it.
>
> Deadlines may lead to unwelcome results, but they prompt parties to act and
> they produce finality. In this case, despite what respondents repeatedly told
> him, Taylor did not object to the claimed exemption. If Taylor did not know
> the value of the potential proceeds of the lawsuit, he could have sought a
> hearing on the issue, see Rule 4003(c), or he could have asked the Bankruptcy
> Court for an extension of time to object, see Rule 4003(b). Having done
> neither, Taylor cannot now seek to deprive Davis and respondents of the
> exemption.

503 U.S. at 643-44.

In <u>Schwab v. Reilly</u>, __ U.S. __, 130 S.Ct. 2652 (2010), the Supreme Court revisited

§ 522(l).  It framed the issue before it as follows;

> This case presents an opportunity for us to resolve a disagreement among the
> Courts of Appeals about what constitutes a claim of exemption to which an
> interested party must object under § 522(l). The issue is whether an interested
> party must object to a claimed exemption where, as here, the Code defines
> the property the debtor is authorized to exempt as an interest, the value of
> which may not exceed a certain dollar amount, in a particular type of asset,
> and the debtor's schedule of exempt property accurately describes the asset
> and declares the "value of [the] claimed exemption" in that asset to be an
> amount within the limits that the Code prescribes. Fed. Rule Bkrtcy. Proc.
> Official Form 6, Schedule C (1991) (hereinafter Schedule C). We hold that, in
> cases such as this, an interested party need not object to an exemption
> claimed in this manner in order to preserve the estate's ability to recover
> value in the asset beyond the dollar value the debtor expressly declared
> exempt.

In <u>Schwab,</u> the debtor, utilizing the federal exemptions available under 11 U.S.C. §

522(b)(2), claimed two exempt interests in equipment pursuant to different sections of the

Bankruptcy Code. She claimed a "tool[s] of the trade" exemption of $1,850 in the

equipment under § 522(d)(6), which permits a debtor to exempt his "aggregate interest, not

to exceed $1,850 in value, in any implements, professional books, or tools, of [his] trade."

Additionally, in columns two and three of Schedule C she claimed a miscellaneous

exemption of $8,868 in the equipment under § 522(d)(5), which, at the time she filed for

bankruptcy, permitted a debtor to take a "wildcard" exemption equal to the "debtor's

aggregate interest in any property, not to exceed" $10,225 "in value." <u>Schwab v. Reilly,</u> 130

S.Ct. at 2657.  According to the Supreme Court, the total value of the claimed exemptions

equaled the value the debtor ascribed to the property on Schedule B and in column four

of Schedule C as the equipment's estimated market value.  <u>Id.</u> at 2658.

Schwab, the Chapter 7 trustee did not object to the debtor's claimed exemptions because the dollar value assigned to each exemption in column three fell within the limits set forth in 11 U.S.C. § 522(d). Because his appraisal revealed that the equipment might have a higher value than that ascribed to the equipment by the debtor, i.e., $17,200 rather than $10,718, he sought court authority to conduct an auction sale. The debtor objected, "equating on Schedule C the total value of the exemptions she claimed in the equipment with the equipment's estimated market value," id., and asserting that "she had put Schwab and her creditors on notice that she intended to exempt the equipment's full value, even if that amount turned out to be more than the dollar amount she declared, and more than the Code allowed." Id.

The Supreme Court held:

Schwab was entitled to evaluate the propriety of the claimed exemptions based on three, and only three, entries on Reilly's Schedule C: the description of the business equipment in which Reilly claimed the exempt interests; the Code provisions governing the claimed exemptions; and the amounts Reilly listed in the column titled "value of claimed exemption." In reaching this conclusion, we do not render the market value estimate on Reilly's Schedule C superfluous. We simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien. . . . As noted, most assets become property of the estate upon commencement of a bankruptcy case, see 11 U.S.C. § 541, and exemptions represent the debtor's attempt to reclaim those assets or, more often, certain interests in those assets, to the creditors' detriment. Accordingly, it is at least useful for a trustee to be able to compare the value of the claimed exemption (which typically represents the debtor's interest in a particular asset) with the asset's estimated market value (which belongs to the estate subject to any valid exemption) without having to consult separate schedules.

14

Id. at 2663-64 (footnote omitted, citations omitted).

Bankruptcy Judge Henry J. Boroff recently construed the Supreme Court decisions in <u>Taylor</u> and <u>Schwab</u> in <u>In re Hall</u>, 453 B.R. 22 (Bankr. D. Mass. 2011). In that case, the debtor claimed the so-called "wild card" exemption under 11 U.S.C. § 522(d)(5) in a wrongful termination action against a former employer. She listed the value of an exemption in an "unknown" amount and also listed the current value of the asset in an "unknown" amount. The Chapter 7 trustee did not expressly conclude or continue the § 341 meeting of creditors, and he did not object to the debtor's claimed exemption. After 30 days from the § 341 meeting and after the Massachusetts Commission against Discrimination entered a probable cause finding, the Chapter 7 trustee applied to employ special counsel to pursue the debtor's wrongful termination claim. The debtor failed to object to the application, but subsequently moved for reconsideration. According to the court, the debtor's primary arguments were that she had exempted the wrongful termination claim in full and that it was fruitless to allow special counsel to pursue the claim because it was no longer property of the estate pursuant to § 522(l). <u>In re Hall</u>, 453 B.R. at 25. The court observed that the debtor likened her case to <u>Taylor</u> because the trustee failed to object to her listing the value of a claimed exemption as "unknown," a circumstance which, in her view, resulted in the exemption of the entire asset and its removal from the bankruptcy estate.

In <u>Hall</u>, the trustee argued that the exemption claimed by the debtor was distinguishable from the exemption claimed by the debtor in <u>Taylor</u>. The trustee

15

maintained that the debtor's reference to § 522(d)(5) as the source of the exemption limited the amount of exemption to which she was entitled. <u>Id.</u>  In his view, "unknown" did not mean "all" because the debtor's available exemption was quantifiable by deducting the total amount of other exemptions claimed under § 522(d)(5) from the maximum exemption allowed by that provision.  <u>Id.</u>  The Trustee also asserted that the deadline for filing an objection to the debtor's exemptions had not passed because he had not concluded the § 341 meeting.  He cited <u>In re Koss</u>, 319 B.R. 317, 321 (Bankr. D. Mass. 2005), where the court held that a § 341 meeting is not concluded until the Trustee so declares or the court so orders. <u>Hall</u>, 453 B.R. at 25-26.  The debtor rejected this position, citing <u>In re Newman</u>, 428 B.R. 257, 264 (B.A.P. 1st Cir. 2010), a decision in which the United States Bankruptcy Appellate Panel for the First Circuit rejected the so-called "debtor's burden" approach used in <u>Koss</u>.  <u>Hall</u>, 453 B.R. at 26.

Judge Boroff observed that many cases discussing <u>Taylor</u> note the underlying assumption in the decision that the full proceeds were claimed as exempt, *see* <u>In re Shelby</u>, 232 B.R. 746, 753 (Bankr.W.D.Mo.1999); <u>In re DeSoto</u>, 181 B.R. 704, 707 (Bankr.D.Conn.1995); <u>Addison v. Reavis (In re Reavis)</u>, 158 B.R. 53, 59 (1993), *aff'd sub. nom.*, <u>Ainslie v. Grablowsky (In re Grablowsky)</u>, 32 F.3d 562, 1994 WL 410995 (4th Cir.1994).  He stated:

> The Debtor's reliance on <u>Taylor</u> is premised on her assertion that by scheduling the value of her exemption in the Claim as "unknown," as the debtor did in <u>Taylor</u>, she too exempted the Claim in its entirety. But the Debtor's analogy glosses over the issue actually decided in <u>Taylor</u>—the correct interpretation of § 522( l )—and grasps at an issue not actually

16

decided by the <u>Taylor</u> Court.  As the First Circuit Court of Appeals has noted, <u>Taylor</u> "does not tell us what has been claimed as exempt—only that whatever has been claimed as exempt is beyond the estate's grasp once the deadline has elapsed." <u>Barroso–Herrans v. Lugo–Mender (In re Barroso–Herrans)</u>, 524 F.3d 341, 344 (2008).  In <u>Taylor</u>, the question of what had been claimed as exempt was apparently not disputed, and the Court stated in its recitation of facts that the debtor "in fact claimed the full amount as exempt." <u>Taylor</u>, 503 U.S. at 642, 112 S.Ct. 1644.

<u>Hall</u>, 453 B.R. at 27-28.  Judge Boroff determined that he was required to determine, in the first place, what the debtor claimed as exempt and that to make that determination he had to focus on the first three columns of Schedule C.  <u>Id.</u> at 28 (citing <u>Schwab v. Reilly</u>, 130 S.Ct. at 2663).  He emphasized that "the Debtor did not simply claim all the proceeds of the Claim [the wrongful termination claim] in an 'unknown' amount as exempt on her Schedule C. Instead, she specified the Code provision governing the exemption as § 522(d)(5). By 'plainly list[ing] [a] discrete statutory citatio[n] supporting the . . . exemption clai[m],' the Debtor 'restrict[ed] . . . the focus of the exemptio[n] claimed. . . .'" <u>In re Hall</u>, 453 B.R. at 28 (citing <u>Mercer v. Monzack</u>, 53 F.3d 1, 3 (1st Cir. 1995)).  Judge Boroff concluded:

> [T]he fact that the Debtor valued the claimed exemption as "unknown" does not, as the Debtor would have it, allow her to now assert an unlimited exemption in the Claim. The Court agrees instead with the analysis and conclusion explicated by the Eighth Circuit Court of Appeals in <u>Stoebner v. Wick (In re Wick)</u>, 276 F.3d 412 (8th Cir. 2002), where the court held that a debtor's use of the value "unknown" with regard to an exemption claim did not operate to exempt the entire asset.

<u>Hall</u>, 453 B.R. at 29.  *See also* <u>In re Luckham</u>, __ B.R. __, 2012 WL 115386 at *4-5 (Bankr. D. Mass. Jan. 13, 2012).

17

B. <u>Analysis</u>

Applying the principles set forth in the Supreme Court and First Circuit cases, the Court concludes that the Debtor's exemption claim pertaining to "Lawsuit pending Bristol County Superior Court . . ." is limited to $11,000.  As in <u>Schwab v. Reilly</u> and <u>In re Hall</u>, the Trustee did not need to object to that claimed exemption under § 522(d)(5) within the time periods set forth in Fed. R. Bankr. P. 4003, because the claimed exemption did not exceed the amount of the available exemption.  In other words, the Trustee's Amended Objection to Exemption is not untimely with respect to the Debtor's claimed exemption of the proceeds of the civil action in the amount of $11,000 pursuant to 11 U.S.C. § 522(d)(5).

Starting with the question asked by Judge Boroff, i.e., "What did the Debtor claim as exempt?" *see* <u>In re Hall</u>, 453 B.R. at 28, the Court finds that the Debtor claimed an exemption in any recovery he might obtain in the civil lawsuit against Pereira pursuant to § 522(d)(5).  As in <u>Schwab</u> and <u>Hall</u> that exemption is limited by the statutorily imposed monetary cap.  Moreover, as in <u>Schwab</u> and <u>Hall</u>, the Court concludes that Rule 4003(b) does not bar the Chapter 7 Trustee from objecting to the Debtor's exemption in any proceeds from the civil suit  to the extent the "unknown" current value exceeds the value of his claimed exemption of $11,000 pursuant to 11 U.S.C. § 522(d)(5).

The Debtor's claimed exemption of  an  "award under a crime victim's reparation law" pursuant to 11 U.S.C. § 522(d)(11)(A) is more problematic, as the Debtor in column one of Schedule C did not describe the indictment or pending criminal action, which had been initiated just five weeks before the Debtor commenced his Chapter 7 case.  He merely

18

referenced § 522(d)(11)(A) in column two and listed both the value of the claimed

exemption and the current value of the property without deducting the exemption as

"Unknown."  As noted above, however, Attorney Prentiss disclosed to Trustee Shamban

that Pereira had been indicted on a number of criminal charges, but Trustee Shamban

never followed-up with the Debtor or Attorney Prentiss with questions about the criminal

action.  In addition, the Debtor never amended Schedule C to describe the potential receipt

of restitution in the criminal proceeding against Pereira.  Trustee Shamban neither

concluded nor continued the § 341 Meeting.  Indeed, between September 15, 2009 and

January 6, 2010, the docket does not reflect anything but routine activity in the case.  On

January 6, 2010, Trustee Shamban filed an application to employ his law offices as counsel

for a variety of purposes, including "analyzing exemptions and objections thereto."

Following the entry of an order granting the Application, no further activity occurred in

the case until Lynne Riley, Esq. was appointed successor trustee due to Trustee Shamban's

unexpected passing.

In In re Newman, 428 B.R. 257 (B.A.P. 1st Cir. 2010), the bankruptcy appellate panel

discussed three approaches to determining when a trustee is procedurally time-barred

from objecting to an exemption under Bankruptcy Rule 4003(b)(1).  It identified "the

'bright-line' approach, the 'case-by-case' approach, and the 'debtor's burden' approach."

428 B.R. at 262.  The bankruptcy appellate panel rejected the debtor's burden approach but

saw no need to adopt or reject either the bright-line approach or the case-by-case approach.

Id. at 264.  It described that the bright-line approach as follows: "Under the 'bright-line'

19

approach, a meeting continued without a follow-up date will be deemed to have been

concluded on the date of the initial meeting for the purpose of determining the beginning

of the thirty-day objection period." 428 B.R. at 262.[6] It described the case-by-case approach

as involving an examination of the facts and circumstances of each case with a focus on the

following factors:    "(1) the length of the delay; (2) the complexity of the estate; (3) the

cooperativeness of the debtor; and (4) the existence of any ambiguity regarding whether

the trustee continued or concluded the meeting." Id. at 263 (citing Peres v. Sherman (In re

Peres), 530 F.3d 375, 378 (5th Cir. 2008)).

Utilizing the bright-line approach, the Chapter 7 Trustee's Amended Objection to

---

[6] The panel cited Smith v. Kennedy (In re Smith), 235 F.3d 472, 476 (9th Cir.2000);
In re Friedlander, 284 B.R. 525, 527 (Bankr. D. Mass. 2002); In re Levitt, 137 B.R. 881, 883
(Bankr. D. Mass. 1992); U.S. v. Cushing (In re Cushing), 401 B.R. 528 (B.A.P. 1st Cir.
2009); and McGowan v. Ries (In re McGowan), 226 B.R. 13 (B.A.P. 8th Cir. 1998)
(discussing the implementation of the "bright-line" approach by local rule), and stated:

> The Ninth Circuit explained the benefits of the "bright-line" approach as
> follows: "To authorize trustees to adjourn meetings indefinitely, even
> when it is unlikely that any subsequent meeting will in fact be called,
> would nullify the thirty-day requirement of [Bankruptcy] Rule 4003(b),
> rendering the holding in Taylor hollow, and undermining the concerns
> expressed by the Supreme Court about promptness and finality." In re
> Smith, 235 F.3d at 476. According to the U.S. Bankruptcy Appellate Panel
> for the Sixth Circuit, "[c]ourts favoring this approach note that a
> bright-line rule provides certainty to trustees as to what assets are to be
> administered, and allows debtors to move on with their fresh start by
> allowing exemptions to become final within a definite and relatively short
> time." In re Dutkiewicz, 408 B.R. at 107 (citing In re Friedlander, 284 B.R.
> at 527; In re Levitt, 137 B.R. at 883).

In re Newman, 428 B.R. at 262-63.

Exemption is unquestionably untimely as Trustee Shamban did not continue the § 341 Meeting to a date certain. Under the case-by-case approach, the Court also concludes the Trustee's Amended Objection to Exemption in any restitution proceeds is time-barred. The Debtor's case was filed on July 30, 2009. Almost two years later, the Debtor filed the Motion for a Determination that the Chapter 7 Trustee Is Procedurally Time-Barred under Rule 4003(b)(1) from Objecting to Debtor's 11 U.S.C. § 522(d)(11)(A) Exemption Claim in Pending Lawsuit against Joseph Pereira. Although the Court denied that Motion on July 25, 2011, as the transcript of the § 341 Meeting was not available, the Trustee did not file her original Objection to Exemption until August 4, 2011 almost two years from the originally scheduled § 341 Meeting of creditors.

Turning to the case-by-case approach, the Court finds that the Debtor's bankruptcy estate is not complex. Excluding the civil and criminal actions against Pereira from consideration, the Debtor did not own any non-exempt assets. The Debtor cooperated with Trustee Shamban at the § 341 Meeting and there was no evidence that he did not cooperate with the successor Trustee. Finally, the transcript from the § 341 Meeting establishes that Trustee Shamban neither concluded nor continued the meeting to a date certain. Additionally he did not seek an extension of time within which to object to the Debtor's exemptions under either § 522(d)(5) or § 522(d)(11)(A) pursuant to Fed. R. Bankr. P. 4003(b)(1) and took no timely action to object to it. He did not timely or vigorously pursue an investigation of the criminal matter or whether the Debtor's claimed exemption under § 522(d)(11)(A) was well-founded. Thus, applying the case-by-case approach, the Court

concludes that the Trustee's Amended Objection to Exemption is untimely with respect to the Debtor's claimed exemption in "an award under a crime victim's reparation law."

Alternatively, even if the Court considers the merits of the Trustee's Amended Objection to Exemption, the Court finds that the Trustee failed to sustain her burden that the Debtor is not entitled to an award under § 522(d)(11)(A), which imposes no monetary limit on the amount of an award a debtor may exempt under a crime victim's reparation law. The Debtor argues that Mass. Gen. Laws ch. 258B § 3(o) is the applicable crime victim's reparation law and the Court agrees. *See* Butner v. United States, 440 U.S. 48, 55 (1979) (bankruptcy courts should look to state law to determine property interests in the assets of a bankruptcy estate because there was no federal "property law"). Section 3(o) provides in pertinent part the following:

> To provide victims a meaningful role in the criminal justice system, victims and witnesses of crime, or in the event the victim is deceased, the family members of the victim, shall be afforded the following basic and fundamental rights, to the greatest extent possible and subject to appropriation and to available resources, with priority for services to be provided to victims of crimes against the person and crimes where physical injury to a person results: . . .

> > (o) for victims, to request that restitution be an element of the final disposition of a case and to obtain assistance from the prosecutor in the documentation of the victim's losses. If restitution is ordered as part of a case disposition, the victim has the right to receive from the probation department a copy of the schedule of restitution payments and the name and telephone number of the probation officer or other official who is responsible for supervising the defendant's payments. If the offender seeks to modify the restitution order, the offender's supervising probation officer shall provide notice to the victim and the victim shall have the right to be heard at any hearing relative to the proposed modification.

22

Mass. Gen. Laws ch. 258B, § 3(o). In <u>Commonwealth v. Fazal</u>, 81 Mass. App. Ct. 1110

(2011), a case involving larceny over $250 and a violation of Mass. Gen. Laws ch. 266, §

30(1), the same criminal statute pursuant to which Pereira was criminally charged, the

court stated:

> "The purpose of restitution . . . is to compensate the injured party for losses
> incurred as a result of the defendant's criminal conduct." <u>Commonwealth v.</u>
> <u>Rotonda</u>, 434 Mass. 211, 221 (2001). Further, "[t]he payment of restitution is
> limited to the economic losses caused by the conduct of the defendant and
> documented by the victim." <u>Ibid.</u> The method of determining the amount of
> restitution must not be arbitrary, and the defendant must have the
> opportunity to cross-examine witnesses on the amount of the victim's losses.
> <u>Commonwealth v. Nawn</u>, 394 Mass. 1, 7 (1985).
>
> At a restitution hearing, the Commonwealth bears the burden of proving the
> amount of the victim's losses by a preponderance of the evidence. <u>Id.</u> at 7–8.
> "A proposition is proved by a preponderance of the evidence 'if it is made
> to appear more likely or probable in the sense that actual belief in its truth,
> derived from the evidence, exists in the mind or minds of the tribunal
> notwithstanding any doubts that may still linger there.'" <u>Commonwealth v.</u>
> <u>Hill</u>, 52 Mass.App.Ct. 147, 154 (2001), quoting from <u>Sargent v. Massachusetts</u>
> <u>Acc. Co.</u>, 307 Mass. 246, 250 (1940).

<u>Fazal</u>, 81 Mass. App. Ct. at *1. Based upon the applicable law, the Court finds that, if and

when, Pereira is required to pay restitution, such an award would fall within the purview

and plain language of § 522(d)(11)(A).

The Trustee argues that this Court should adopt the reasoning of the court in <u>In re</u>

<u>Seymour</u>, 285 B.R. 57 (Bankr. N.D. Ga. 2002). In that case, the court observed that "[t]he

grouping of these particular exemptions [under § 522(d)(11)] suggests that the common

thread among the exemptions is not to protect repayments made to compensate a debtor

for a direct pecuniary loss or other damage to property" and that they "are all intended to

protect a debtor's right to payments that would either replace a loss of the debtor's future

source of support or would serve to compensate the debtor for an injury to his person." <u>Id.</u>

at 59-60.[7] *See also* <u>In re Carelock</u>, No. 05-51431-JDW, 2006 WL 3708688 (Bankr. S.D. Ga. Jan.

---

[7] The Court in <u>Seymour</u> stated the following:

Neither party has been able to locate any case law that would be helpful in
defining the meaning of a crime victim's reparation law, and the
legislative history for the Georgia statute is scant, if not non-existent.
However, the Georgia exemption statute is identical in language to the
federal statute. *Compare* O.C.G.A. § 44–13–100(a)(11)(A), *with* 11 U.S.C. §
522(d)(11)(A). As the Debtors have noted in their brief, the legislative
history associated with the federal statute provides that:

> Paragraph (11) allows the debtor to exempt certain
> compensation for losses. These include crime victim's
> reparation benefits, wrongful death benefits (with a
> reasonably necessary for support limitation), life insurance
> proceeds (same limitation), compensation for bodily injury,
> not including pain and suffering ..., and loss of future
> earnings payments (support limitation). This provision in
> subparagraph (D)(11) is designed to cover payments in
> compensation of actual bodily injury, such as the loss of a
> limb, and is not intended to include the attendant costs that
> accompany such a loss, such as medical payments, pain and
> suffering, or loss of earnings.

H. Rept. No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. &
Admin.News 1977, p. 5963.

The Court is persuaded by the legislative history that it was the intent of
Congress to allow debtors to exempt amounts that serve as compensation
for losses associated with personal, bodily injury, and with a loss of the
debtor's future source of support that arises in cases in which the debtor
or someone of whom the debtor is a dependent suffers death or bodily
injury, as opposed to compensation or restitution for a direct pecuniary
loss.

Both the Trustee and the Debtors have proposed reasonable

13, 2006).  This Court is not persuaded by the approach taken in <u>Seymour</u> and <u>Carelock</u>.

Section 522(d)(11)(A) is not ambiguous and makes no reference to personal bodily injuries,

let alone limiting any recovery under a crime victim's reparation law to such personal

injuries.  Because the language of § 522(d)(11)(A) is unambiguous, the Court is not required

---

interpretations of the exemption statute. The lack of case law or clear legislative intent requires the Court to look "to the context of usage, coupled with the underlying purpose of the exemption statute, [to] best reveal the proper interpretation" of the exemption. <u>Niedermayer v. Adelman</u>, 90 B.R. 146, 148 (D.Md.1988).

\*\*\*

Accordingly, the Court is persuaded that the exemptions found in § 522(d)(11) and in O.C.G.A. § 44–13–100(a)(11) are all intended to protect a debtor's right to payments that would either replace a loss of the debtor's future source of support or would serve to compensate the debtor for an injury to his person. Therefore, the Court agrees with the Trustee that the reference made by the statute to an award under a crime victim's reparation law is meant to include compensation for victims who suffer physical injury or death from a violent crime, rather than compensation payable as restitution for money or property that is wrongfully converted. *See* O.C.G.A. § 17–15–7; O.C.G.A. § 17–15–2 (a person is eligible to file a claim for reparation if he or she is injured physically, dies, or suffers financial hardship as a result of being injured physically as a direct result of a crime, which is further defined as an "act which constitutes hit and run ..., homicide by vehicle ..., serious injury by vehicle ..., or any act which constitutes a violent crime as defined by state or federal law which results in physical injury or death to the victim").

285 B.R. at 58-60.

25

to consult legislative history.  Accordingly, based upon the foregoing, the Court concludes that the Trustee's Amended Objection to the Debtor's claimed exemption under § 522(d)(11)(A) is untimely.  In the alternative, the Court finds that it lacks merit.

## V. CONCLUSION

Based upon the foregoing, the Court shall enter an order sustaining the Trustee's Amended Objection to Exemption in part and overruling the Amended Objection to Exemption in part.  The Court rules that the Debtor is entitled to an exemption in an amount capped by § 522(d)(5) in the civil action against Pereira and an exemption in any award he may receive pursuant to § 522(d)(11)(A) and the applicable crime victim's reparation law, namely Mass. Gen. Law ch. 258B, § 3(o).  The Debtor's Motion for Reconsideration of the Motion for Determination and the Trustee's Objection to the Motion for Reconsideration are moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  March 6, 2012

26